IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SCOTT ALLEN BLACK,                    )
                                      )
            Petitioner,               )
                                      )
                                      )        CIV-11-1130-M
v.                                    )
                                      )
JAMES EZELL, Warden,                  )
                                      )
            Respondent.               )

## REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  In his Amended Petition filed December 1,

2011, Petitioner challenges the conviction for Arson in the First Degree entered against him

in the District Court of Jefferson County, Case No. CF-2009-12.  Respondent has responded

to the Petition and filed the relevant state court records, including certified copies of the

original state court record (hereinafter "OR__") and the trial transcript (hereinafter "TR__").

The matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that

the Petition be denied.

I. Background

On June 4, 2009, Petitioner and his wife, Kathryn Black, were at their home alone

when they began arguing around 7:00 or 8:00 p.m.  During the argument, Kathryn threw a

1

hammer and destroyed a television in the couple's bedroom.  She also broke several glasses and a fish tank in the living room of the home.  Petitioner retreated from the argument and went to the two-car garage of the home where he opened the garage door and lit a cigarette with his lighter.  Sometime around 11:00 p.m. (a 911 emergency call from Petitioner was recorded as received at the Jefferson County Sheriff's Office at 11:03 p.m.), Kathryn went to the garage, picked up a can containing gasoline, pulled down the pouring spout on the can, and started pouring gasoline on some items in the garage, including shoes, a backpack, and pillows.  She did not have a lighter.  Petitioner took the gasoline can from his wife and told her, "Let's do it the right . . . way," poured gasoline on both of them, and lit his lighter, catching her on fire.  TR vol. I, at 219. He then attempted to extinguish the fire and called 911.  Kathryn somehow managed to remove her burning shirt in the laundry room and get into the shower in the couple's bedroom.  After emergency medical technicians and Jefferson County Sheriff Tolle arrived at the scene, Petitioner told Sheriff Tolle that he had been angry with Kathryn and that he started the fire.

After the ambulance left with Kathryn to take her to the local hospital, Sheriff Tolle asked Petitioner if he would walk with the Sheriff through the house and describe what happened.  Petitioner agreed and  walked with Sheriff Tolle through the interior of the house and the garage, pointing out various items and recounting the events at the home that night.

As a result of the fire, Kathryn was severely injured, with second and third degree burns to her neck, chest, part of her left arm, and all of her right arm.  She was hospitalized for approximately two months after the fire.  At the time of Petitioner's trial three months

later, she had undergone several skin graft procedures and physical therapy, and she was still unable to return to her previous job.  She also had difficulty breathing and suffered skin contractures from scarring.

After Petitioner had walked with Sheriff Tolle through the home, Sheriff Tolle suggested Petitioner get medical treatment.  An undersheriff took Petitioner to the same hospital where Kathryn was being treated.  While a nurse was treating the chemical burns on Petitioner's arms and upper thighs, Petitioner threw his eyeglasses on the floor and stated that "it was his fault and he wanted to die and should have died." TR vol. II, at 259.  Petitioner also told a nurse at the hospital that he and his wife had been fighting, that she tried to sprinkle gasoline on him, and that he grabbed the gasoline can from Kathryn and told her, "If you're going to do it, do it right." TR vol. II, at 393.  He then poured gasoline over her, lit his lighter, and, according to the nurse, he admitted "it caught her on fire." TR vol. II, at 393-394.

Sheriff Tolle contacted the Oklahoma State Bureau of Investigation ("OSBI") and requested assistance.  OSBI agents Stewart, Williams, and Homer assisted with the investigation of the crime.  OSBI agent Stewart obtained a search warrant, OR 92-95, and several items, including a lighter, gas can, and shirt, were seized as evidence. OR 96.  After Petitioner was taken into custody, Petitioner made a statement to OSBI agents Stewart and Williams in which he denied starting the fire, although he admitted telling Sheriff Tolle that he poured gasoline on his wife and himself. TR vol. II, at 326-330. He also admitted he was holding a lighter at the time his wife "burst into flames." TR vol. II, at 326-327.

3

In an information filed in the Jefferson County District Court on June 5, 2009, Petitioner was charged with Arson in the First Degree. Counsel was appointed to represent Petitioner. However, Petitioner retained two attorneys to represent him. OR 15-18. On Petitioner's behalf, his attorneys filed pre-trial motions for discovery, to suppress his statements made to law enforcement officials, to quash the information for insufficient evidence, and to suppress the evidence obtained in the search of the residence. OR 26-31, 38-45, 65-69, 70-78. Counsel also filed on Petitioner's behalf motions in limine to prevent the admission of statements or testimony relating to the "Battered Woman Syndrome," to prevent the admission of statements or testimony of a prejudicial nature, and to prevent introduction of evidence concerning the victim's injuries. OR 80-81, 82-83, 97-99. Following a hearing, the motions to suppress were overruled, and the motions in limine were overruled in part and sustained in part. OR 102-103.

Petitioner was tried before a jury on September 15-17, 2009. At trial, Kathryn Black testified that when she went to the garage she did not have a lighter, that Petitioner had a lighter, and that she did not pour gasoline on herself, but she did not know how the fire was started. TR vol. I, at 144-150.

Petitioner testified that the fire was an "accident," that he did not light the lighter but rather "[s]he grabbed my hand" with the lighter in it, that he was "browbeat" into admitting to the OSBI agents he started the fire, and that he did not intend for his wife to be injured. TR vol. II, at 409-432. Recordings of Petitioner's statement to Sheriff Tolle and his statement to OSBI agents Stewart and Williams were played for the jury. The jury found

4

Petitioner guilty of the Arson in the First Degree and recommended punishment of 20 years of imprisonment and a $25,000.00 fine. (OR 145). On November 10, 2009, Petitioner was sentenced accordingly by the district court. OR 173-179.

Petitioner appealed the conviction with new court-appointed counsel.  He asserted on appeal that there was insufficient evidence to support the conviction. Response, Ex. 1.  The Oklahoma Court of Criminal Appeals ("OCCA") issued a summary opinion on October 7, 2010, in which the OCCA rejected Petitioner's claim of insufficient evidence.  Specifically, the appellate court found that "[t]he jury could reasonably infer from [Petitioner's] words and actions, which resulted in a gasoline fueled fire, that he acted maliciously, wishing to vex, annoy or injure his wife and that his conduct was simply 'antithetical to a finding of accident and negligence.'" Response, Ex. 3.

In May 2011, Petitioner filed a *pro se* application for post-conviction relief in the district court.  In his application, Petitioner asserted five grounds for relief, including claims that (1) his statements to law enforcement officials were improperly admitted, (2) evidence admitted at his trial was the fruit of an impermissible search and seizure and should not have been admitted, (3) a juror was not qualified to serve on the jury, thereby denying Petitioner a fair trial, (4) Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel, and (5) Petitioner was denied his Sixth Amendment right to effective assistance of appellate counsel.  Response, Ex. 4.  In a brief in support of the application, Petitioner asserted that his appellate counsel did not communicate with Petitioner, filed an "inadequate" brief, and failed to raise the "critical issues warranting relief" urged in the other  issues

presented in the post-conviction application. Response, Ex. 5.

The district court found that Petitioner had procedurally defaulted his first four claims for post-conviction relief and that Petitioner failed to show he was denied effective assistance of appellate counsel. Consequently, the district court denied the application. Response, Ex. 7. On appeal, the OCCA affirmed the district court's decision. The appellate court found that Petitioner had procedurally defaulted all of his claims except his claim of ineffective assistance of appellate counsel and that Petitioner had not shown he was prejudiced by the alleged deficiencies of his appellate counsel. Response, Ex. 9.

II. Standard of Review

In his Amended Petition, Petitioner asserts in ground one that insufficient evidence was presented at his trial to support the conviction. As support for this claim, Petitioner relies on the argument presented in his direct appeal that the evidence did not show the element of malicious intent to injure his wife. In ground two, Petitioner asserts both a claim of ineffective assistance of trial counsel and a separate claim of ineffective assistance of appellate counsel. In support, Petitioner asserts only that his trial attorney did not "conduct a reasonable and viable defense, file the pretrial motions, if they are warranted, conduct investigation and interviews, to gather and present the evidence for the defense." Amended Petition, at 7.

With respect to Petitioner's claims of insufficient evidence and denial of effective assistance of appellate counsel, these claims were denied by the OCCA on their merits. Consequently, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the

standard for reviewing these claims.   Under the AEDPA, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413.  A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).   With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson,  542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).

7

III. Sufficiency of the Evidence

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110(1998). In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer, 74 F.3d at 1013 (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487(10th Cir. 1993)).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma's definition of the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16. In Oklahoma, the elements of first degree arson are (1) a willful and malicious (2) setting fire to or burning by use of any accelerant or ignition device (3) a person (4) caused by the defendant. Okla. Stat. tit. 21, § 1401; OR 131 (instruction to jury citing OUJI CR 2d 5-2).

Because the OCCA implicitly applied the <u>Jackson</u> standard[1] in rejecting Petitioner's sufficiency claim on appeal, this Court's "task is limited by AEDPA to inquiring whether the OCCA's application of <u>Jackson</u> was unreasonable." <u>Mathews v. Workman</u>, 577 F.3d 1175, 1183 (10th Cir. 2009), <u>cert. denied</u>, __ U.S. __, 130 S.Ct. 1900 (2010).   Petitioner provides a theory as to why he believes the evidence was not sufficient to show his malicious intent. He asserts that he was not aware that his wife was pouring gasoline on the floor of their garage when he "turned around and tried to stop her" and his "lit cigarette ignited the gasoline, burning her, myself and some of our property.  This was an accident." Petition, at 6.  This version of the offense is not consistent with Petitioner's own testimony at his trial in which he stated that when his wife came into the garage and stated she wanted to "burn things" and he handed his wife the gasoline can and told her to "[g]o for it." TR vol. II, at 431.  Nor is this version of the facts consistent with Petitioner's recorded statement made to Sheriff Tolle before he was arrested, his statements at the hospital immediately after the fire, or his recorded statement made to OSBI agents Stewart and Williams.   In each of those statements, Petitioner admitted he was fully aware that his wife was pouring gasoline on items in their garage before the fire was ignited.  He did not previously state that his cigarette caused the fire.

---

[1]The OCCA did not cite <u>Jackson</u> in its decision, but the court indicated it applied the relevant standard when it concluded that "any rational trier of fact could have found the essential elements of first degree arson beyond a reasonable doubt." Response, Ex. 3, at 2. Thus, the court's failure to cite the <u>Jackson</u> decision is unimportant. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)(in determining whether state court decision is "contrary to" controlling Supreme court precedent state court need not cite to Supreme Court's cases or even be aware of them "so long as neither the reasoning nor the result of the state-court decision contradicts them").

There was more than sufficient evidence presented at the trial, however, to support the arson conviction. Petitioner's voluntary statement to Sheriff Tolle immediately after the fire was recorded and played for the jury. Sheriff Tolle also testified concerning the Petitioner's statement. In this statement, Petitioner admitted he was angry at Kathryn, that he took the gasoline can from her and stated, "Let's do it the right . . . way," poured gasoline on both of them, and ignited his lighter which started the fire and injured his wife. TR vol. I, at 219  Petitioner's custodial statement to OSBI agents Stewart and Williams was also played for the jury, and agent Stewart testified concerning Petitioner's statement. In this statement, although Petitioner denied igniting his lighter, he also admitted relevant portions of his previous statement to Sheriff Tolle, including stating to his wife that "[i]f we're going to do this, let's do it right." TR vol. II, at 325. Ms. Overton, the nurse who treated Plaintiff at the hospital, also testified concerning Petitioner's statement to her shortly after the fire. She testified he stated that he poured gasoline on his wife and ignited his lighter after telling his wife "[i]f you're going to do it, do it right." TR vol. II, at 393-394.  In Petitioner's own trial testimony, he admitted that immediately before the fire started he stated to his wife that "[i]f we're going to do it, let's do it right," and that right after the fire he "wanted to die." TR vol. II, at 422, 424.  Although Petitioner denied that he intentionally started the fire, he also admitted that "apparently" he ignited the fire with his lighter. TR vol. II, at 418.  He also admitted telling Sheriff Tolle he was angry with his wife and that he ignited the lighter. TR vol. II, at 422, 429.  Although Petitioner testified that his lighter was in his left hand and that Kathryn "grabbed [my] hand" and he did not know how the lighter ignited, Petitioner also

10

admitted that a photograph taken of him by Sheriff Tolle immediately after the fire showed that the hair on his right arm was singed. TR vol. II, at 428-430.  Petitioner further admitted at trial that he handed his wife the gasoline can and told her to "[g]o for it." TR vol. II, at 431.  Although Petitioner testified that his hands were burned, nurse Overton testified that Petitioner suffered only superficial chemical burns on his thighs and forearms. TR vol. II, at 389, 433.

Considering these  statements, as the OCCA found, the jury could reasonably have inferred that Petitioner intentionally ignited his lighter and started the fire with the intent to injure his wife.  There was other circumstantial evidence supporting the jury's finding of malicious intent, including a photograph taken after the fire showing the gasoline can was positioned upright in the garage and the spout was detached from the can and a photograph of Petitioner taken by Sheriff Tolle immediately after the fire showing Petitioner did not sustain burn injuries other than singed hair on his arms. Petitioner has not demonstrated that the OCCA's decision was contrary to or unreasonably applied the governing Jackson standard.  Therefore, Petitioner is not entitled to habeas relief concerning this claim.

## IV. Ineffective Assistance of Trial Counsel

Petitioner contends in his second ground for habeas relief that he was denied his Sixth Amendment right to the effective assistance of trial counsel.  In support of this claim, Petitioner asserts in the Petition only generalized statements of deficient conduct.  However, in his post-conviction application, Petitioner asserted that his trial counsel provided constitutionally ineffective assistance by failing to "challenge" certain testimony by defense

11

witness Overton and by failing to adequately prepare Petitioner for his trial testimony. Response, Ex. 5. Petitioner also asserted that his trial counsel failed to offer jury instructions on lesser offenses or lesser-included offenses such as second or third degree arson, reckless endangerment, or criminal negligence. Petitioner further asserted that his trial counsel failed to investigate facts and circumstances in the case. He referred to evidence of medications Kathryn was taking at the time of the fire which could have caused her "bizarre behavior that resulted in this incident" and also evidence in the form of "good character witnesses." Id. at 17.

The OCCA determined that Petitioner had waived this claim because it was not raised in his direct appeal. Federal courts do not review issues raised in a habeas petition "that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998)(citing, e.g., Coleman v. Thompson, 501 U.S. 722, 749-750 (1991)). "In a habeas proceeding in which an ineffective assistance claim was not raised on direct appeal, the Oklahoma [procedural] bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone." Id. at 1264.

In this case, Petitioner had different counsel for his direct appeal, and therefore the first requirement of the English analysis is satisfied. Two of Petitioner's claims of ineffective assistance of trial counsel cannot be resolved on the basis of the trial record alone. With respect to Petitioner's contentions that his trial counsel did not adequately prepare him for

his trial testimony and failed to investigate and offer evidence concerning Kathryn's medications, review of the merits of these claims would involve circumstances outside of the trial record.

In Oklahoma, ineffective assistance claims must normally be brought on direct appeal. However, Oklahoma provides a procedure for remand to the trial court for an additional hearing on ineffective assistance claims. See Okla. Stat. tit. 22, ch. 18, app. Rule 3.11. "But Oklahoma rarely, if ever, remands cases for such a hearing." Snow v. Sirmons, 474 F.3d 693, 726 n. 35 (10th Cir. 2007). As to these claims, Oklahoma's procedural bar rule applies as long as "the applicable Oklahoma remand procedure was adequate." English, 146 F.3d at 1264-1265. Petitioner does not contend that Oklahoma's procedures were not adequate to allow him to supplement the record to support a claim of ineffective assistance of counsel on appeal.

In this case, however, the complicated procedural default issue may be bypassed because the ineffective assistance claim should be denied on its merits. See Cannon v. Mullin, 383 F.3d 1152, 1159 (10th Cir. 2004)("When questions of procedural bar are problematic, . . ., and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits."), cert. denied, 544 U.S. 928 (2005). Moreover, because Petitioner asserts his claim of ineffective assistance of trial counsel as underlying support for his claim of ineffective assistance of appellate counsel, the merits of the claim must be addressed regardless of his procedural default in the state courts.

Ineffective assistance claims are analyzed under the now-familiar, two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  "First, [Petitioner] must show that counsel's performance was deficient." Id. at 687.  To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." Id. at 687, 688.  There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." Id. at 689.

With respect to the second prong of the analysis, Petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694.  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695.

In his post-conviction application, Petitioner contended that he testified at his trial without "prior notice that this would be done and absolutely no discussion of what questions would be asked of him.  This was highly prejudicial, in that Petitioner made statements on the witness stand that his attorney never would have allowed him to make, had he known in advance." Response, Ex. 5, at 16 (Petitioner's brief in support of post-conviction application).  To be sure, a review of the trial transcript reveals that Petitioner's trial testimony was somewhat confused and uncertain concerning the events preceding the fire.  However, Petitioner was able to proffer his version of the events and testify in his defense

14

that he had no intention of injuring his wife.   Petitioner's hindsight analysis concerning the effect of his testimony upon the jury does not demonstrate that his counsel's performance was deficient.   Moreover, Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different had Petitioner's attorney taken more or different steps to prepare Petitioner for his testimony prior to trial.

In his brief filed in support of his post-conviction application, Petitioner contended that his trial counsel also provided constitutionally ineffective assistance by failing to request jury instructions on lesser offenses or lesser-included offenses.   Petitioner surmised that the jury might have found him guilty of second or third degree arson, reckless endangerment, or criminal negligence if the jury had been so instructed.   However, Petitioner pointed only to his testimony and his wife's testimony as indicative of circumstances warranting the other instructions.   Petitioner testified that he was innocent of the offense because the fire was an accident.   Thus, he was either guilty of the offense or he was innocent.   Petitioner has not shown either deficient performance or prejudice as a result of any failure by his trial counsel to request that the jury be instructed on lesser or lesser-included offenses.

Petitioner contended in his post-conviction proceeding that his trial counsel provided ineffective assistance by failing to investigate other facts he believes were relevant, including medications his wife Kathryn was taking for "grand mal seizures" at the time of the fire.   He surmised that his wife's "bizarre behavior that resulted in this incident" was caused by these medications as well as "the circumstances of her home life."   Response, Ex. 5, at 17. Petitioner did not contend that he had no knowledge of any medications his wife was taking

15

prior to the fire, and he did not contend that he informed his trial attorneys of any such medications.  Nor did he testify during his trial that his wife's medications somehow caused the fire that resulted in her severe injuries.  Petitioner has not shown either deficient performance or prejudice as a result of any failure by his trial counsel to investigate whether his wife was taking medications prior to the fire.

Petitioner contended in the post-conviction proceeding that his trial counsel provided ineffective assistance by failing to subpoena "good character witnesses . . . ." Response, Ex. 5, at 17.  At trial, the defense called witnesses, including nurse Overton who treated Petitioner at the hospital and Petitioner's step-son, who both provided testimony concerning Petitioner's character.  Nurse Overton testified that Petitioner was very concerned about his wife after the fire, and Petitioner's step-son testified that Petitioner had never exhibited violence toward Kathryn or him.   "Generally, counsel's failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented at trial is not deemed constitutionally deficient." Snow, 474 F.3d at 729 (citing cases).  Petitioner has not shown that his counsel's failure to call other defense witnesses who might have provided testimony as to Petitioner's "good character" was deficient performance.   Given the substantial evidence of his guilt presented at the trial, Petitioner has not shown a reasonable probability that the result of the trial would have been different had his counsel called additional "good character" witnesses at trial.

The record of the criminal proceeding and trial reflect that Petitioner's attorneys filed numerous pre-trial motions, some of which were successful, and argued before and during

16

trial that Petitioner's statements to law enforcement officials and other evidence should be suppressed. Petitioner has not demonstrated that his counsels' actions were outside the range of competence demanded of criminal defense attorneys. Nor has Petitioner demonstrated that but for any unprofessional errors by his trial counsel there is a reasonable probability that the result of the trial would have been different. Thus, Petitioner is not entitled to habeas relief concerning this claim. Employing the same standard laid out in <u>Strickland</u>, <u>supra</u>, for reviewing the assistance provided by Petitioner's appellate counsel, Petitioner has also failed to show a reasonable probability that the result of his appeal would be different if his appellate counsel had raised a claim of ineffective assistance of trial counsel in Petitioner's direct appeal.

V. <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner contends that he was denied his Sixth Amendment right to effective assistance of appellate counsel. Petitioner's court-appointed appellate counsel, Mr. Presson, is an experienced criminal appellate attorney, and he filed a 14-page brief on behalf of Petitioner in the appeal asserting that insufficient evidence was presented during the trial to support Petitioner's conviction. Response, Ex. 1. Petitioner provides no specific support for this claim. However, in his post-conviction proceeding, Petitioner asserted that Mr. Presson's assistance was constitutionally deficient because he failed to assert three claims: (1) that Petitioner's statements to law enforcement officials were improperly admitted during the trial; (2) that evidence was improperly admitted at his trial because it was the fruit of an impermissible search and seizure; and (3) that one juror was not qualified to serve on the

jury. Response, Ex. 5, at 9-15.   It is assumed that Petitioner is basing his ineffective assistance of appellate counsel claim on the omission of these issues in the direct appeal.

Relying on the Supreme Court's decision in Strickland, supra, the OCCA found that Petitioner had not shown prejudice with respect to his claim of ineffective assistance of appellate counsel and he therefore had not demonstrated a denial of his Sixth Amendment rights.   Thus, Petitioner must demonstrate that OCCA's rejection of this claim was contrary to or an unreasonable application of the Strickland decision.

For Petitioner to establish he is entitled to habeas relief concerning his allegation of ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test established in Strickland, supra; that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687.   The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).   "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson, 143 F.3d at 1321. If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).

"If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish

deficient performance...." <u>Cargle</u>, 317 F.3d at 1202.  If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." <u>Id.</u>  <u>See</u> <u>Hawkins</u>, 185 F.3d at 1152 (if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

In his post-conviction proceeding, Petitioner contended that his appellate counsel was ineffective because he failed to assert that Petitioner's statements to law enforcement officials were improperly admitted at trial.  He based this assertion on his claim that (1) Sheriff Tolle did not obtain a valid waiver of Petitioner's rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), prior to taking Petitioner's statement and (2) he did not voluntarily waive his <u>Miranda</u> rights when he gave a statement to OSBI agents because he "did not understand" those rights and did not have his eyeglasses and therefore "could not read the <u>Miranda</u> waiver he signed . . . ." Response, Ex. 5, at 11.  Petitioner also contended that his appellate counsel was ineffective by failing to raise a claim of the improper admission of evidence obtained in an impermissible search and seizure.  Petitioner asserted that he was in custody at the time Sheriff Tolle observed the evidence in his home that later provided the basis for the search warrant obtained and executed by the OSBI agents.

As a result of motions to suppress filed by Petitioner's trial counsel, the voluntariness of Petitioner's statements to law enforcement officials was the subject of both pre-trial hearings and hearings outside of the presence of the jury during his trial.  In an extensive

hearing conducted prior to trial, Sheriff Tolle testified that Petitioner voluntarily gave a statement to Sheriff Tolle, which Sheriff Tolle recorded, immediately after the fire, while emergency medical technicians were treating Kathryn inside the home and preparing her to be taken to the hospital for medical treatment.  Sheriff Tolle testified that Petitioner then voluntarily guided Sheriff Tolle through the home and described the events of the evening while pointing out various items, including a broken television set, the victim's clothing, a gasoline can, and a lighter. Sheriff Tolle testified that Petitioner was not in custody at the time he made these statements and that he did not threaten Petitioner or make any promises to Petitioner in return for his statements. Sheriff Tolle also testified that he asked Petitioner if he wanted medical treatment for a blister on his arm, and Petitioner stated he did, so Petitioner was transported to the hospital by a deputy sheriff, although Petitioner was not in custody during the ride or during his medical treatment at the hospital. Sheriff Tolle further testified that Petitioner did not appear to be in severe physical pain, he understood what was going on, he did not ever ask to stop talking with the Sheriff, and he knew what had happened.  According to Sheriff Tolle, Petitioner's statement made at the hospital was voluntary and not the result of any questioning.  See Transcript of Hearing on Motions to Suppress conducted September 4, 2009.  Sheriff Tolle's trial testimony was consistent with his testimony at the suppression hearing.

OSBI agent Stewart testified at the pretrial hearing concerning the voluntariness of Petitioner's custodial statement to the agent.  Agent Stewart testified that Petitioner was arrested at 1:35 a.m. on June 5, 2009, and that he was interviewed by Agent Stewart at

approximately 5:00 a.m. that same day.   Agent Stewart testified that prior to taking Petitioner's statement he read Petitioner his rights under the <u>Miranda</u> decision, he read the waiver of rights portion of the form, he asked Petitioner if he agreed to speak with the agent, and Petitioner stated he was willing to speak with the agent and signed the form.   Agent Stewart testified that Petitioner never asked to stop speaking with the agent or request an attorney.   Agent Stewart testified that Petitioner had small gauze bandages on his right hand, left forearm, and right thigh, but he never stated he was in pain due to these injuries. According to Agent Stewart,  Petitioner had been placed on suicide watch by jail personnel and he was remorseful, but he was rational, coherent, did not appear to be sleepy, and understood what was going on at the time he made his statement.   Agent Stewart's trial testimony was consistent with his testimony at the pretrial suppression hearing.

At the conclusion of the suppression hearing, the trial court overruled the motions to suppress Petitioner's statements, finding that Petitioner was not in custody at the time he made the voluntary statements to Sheriff Tolle and that Petitioner's statement to OSBI agent Stewart were preceded by a voluntary and knowing waiver of his rights under the <u>Miranda</u> decision.     Petitioner also moved to suppress any testimony directed toward anything observed by Sheriff Tolle when Petitioner walked him through the home after the fire as an allegedly improper search conducted by Sheriff Tolle.   The trial court overruled this motion on the ground that the search conducted by Sheriff Tolle after Sheriff Tolle asked if Petitioner would walk him through the home and describe the events surrounding the fire was made with Petitioner's consent.

After hearing the testimony of Agent Stewart concerning the preparation, endorsement, and execution of a search warrant obtained by the agent on June 5, 2009, and considering Sheriff Tolle's testimony, the trial court also overruled the motion to suppress evidence obtained in the search of Petitioner's and the victim's home.  The trial court found that the search warrant was based on Sheriff Tolle's observations made during a consensual search of the home and that the search warrant was valid.

During the trial, Petitioner was given the opportunity to and did re-urge the motions to suppress Petitioner's statements and the evidence obtained pursuant to the search warrant. The trial court conducted an *in camera* hearing concerning the voluntariness of Petitioner's statements to Sheriff Tolle and the admissibility of the recording of his initial statement to Sheriff Tolle. TR vol. I, at 207-215.   The trial court also conducted an *in camera* hearing concerning the admissibility of the evidence obtained as a result of the search of Petitioner's home.  These motions were again overruled by the trial court.

Because Petitioner testified at trial, he had the opportunity to present evidence concerning his statements to Sheriff Tolle and to Agent Stewart.  During his testimony, Petitioner testified that the statements he made to Sheriff Tolle were voluntary and that he voluntarily walked Sheriff Tolle through his home and showed him items relevant to the offense.  TR vol. II, at 413.   Petitioner also conceded that his statements to Agent Stewart were made after he voluntarily consented to talk to them following his waiver of his Miranda rights. TR vol. II, at 420.

In a third proposition that Petitioner asserted should have been raised by his appellate

22

attorney in his direct appeal, Petitioner contended in his post-conviction proceeding that a juror at his trial was not qualified to serve on the jury. This issue was the subject of an *in camera* hearing conducted following the presentation of evidence and before the court's instructions were read to the jury. TR vol. II, at 443-447. The trial court indicated on the record that one of the jurors was an active, registered sex offender, that she had pled guilty in 1992 to a charge of sexual assault upon a minor, but that the criminal charge had been dismissed after she successfully completed a ten-year probationary period. In Oklahoma, a person who is a convicted felon is not qualified to be a juror. Okla. Stat. tit. 38, § 28(B)(6). Neither party objected to her serving on the jury, and Petitioner's appellate counsel's performance was not deficient as a result of his failure to raise this issue in Petitioner's direct appeal.

The OCCA found that Petitioner had not demonstrated he was prejudiced as a result of any of the alleged errors raised in the post-conviction proceeding. Considering the substantial evidence of Petitioner's guilt presented at his trial, Petitioner has not shown that the OCCA's rejection of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of the <u>Strickland</u> standard.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this

Court by _____March 13th_____ , 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.  Plaintiff's Application to Proceed In District Court without Prepaying Fees or Costs (Doc. # 25) is DENIED as moot, and any pending motion not specifically addressed herein is denied.

ENTERED this _____22nd_____ day of _____February_____ , 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE